UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | § |
| Plaintiff, | § |
| | §  6:18-CR-00283-ADA-15 |
| v. | § |
| SHAUNA GILSTRAP, | § |
| Defendant. | § |

**ORDER**

Before the Court is Movant Shauna Gilstrap's First Step Act Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A), filed on April 3, 2023. ECF No. 1048. The Government filed its response to the Motion on May 23, 2023. ECF No. 1056. Gilstrap filed her reply to the Government's response on May 30, 2022. ECF No. 1058. After considering the briefings and the applicable law, Shauna Gilstrap's First Step Act Motion for Compassionate Release is **GRANTED**.

I.   BACKGROUND

On September 11, 2018, Gilstrap was charged with conspiracy to possess with intent to distribute and distribution of methamphetamine, contrary to 21 U.S.C. § 841(a)(1) and (b)(1)(B)(viii). ECF No. 3. She was arrested nine days later, on September 20, 2018, ECF No. 1048 at 3. On June 18, 2019, Gilstrap pleaded guilty to the conduct charged in the indictment. ECF No. 631. On February 3, 2021, this Court sentenced Gilstrap to 87 months in prison to be followed by five years of supervised release, a $500 fine, and a $100 special assessment. ECF Nos. 971, 973.

The basis for Gilstrap's § 3582 Motion is her rapidly deteriorating medical condition and inability to provide sufficient self-care in prison. ECF No. 1048 at 2. Since the start of her

incarceration, Gilstrap has experienced a precipitous physical decline. She is suffering from a longstanding seizure disorder, has more recently been diagnosed with a meningioma brain tumor, and now requires the use of a wheelchair because of a tentative diagnosis that she has injured the Charcot joint in her ankle. *Id.* Gilstrap also suffers from other medical conditions, including polycystic kidney disease, nodules in her lungs and sleep apnea, and she cannot access a CPAP machine as recommended for her sleep apnea. *Id.*

Before her sentencing, Gilstrap was assigned by the U.S. Probation Office a total criminal history of zero. ECF No. 735 ¶¶ 46-49. She has a criminal history category of 1 according to the USSG sentencing guidelines. *Id.* ¶ 49. She has been classified by the Bureau of Prisons ("BOP") as a minimal risk of recidivism and a minimal risk of violence, the lowest possible. ECF No. 1048-20.

While imprisoned, Gilstrap has shown remorse for her actions and a commitment to bettering herself. *See* ECF Nos. 1048-5, 1048-11. She has completed substance abuse counseling and is active in Narcotics Anonymous. Her prison record also lists no incidents. Further, she has a stable release plan, which includes the support of her mother, who is experienced in and prepared for caring for Gilstrap's specific medical needs. ECF No. 1048-10.

## II.  LEGAL STANDARD

In 2018, Congress enacted the First Step Act ("FSA"). The FSA contains a compassionate release statute that grants sentencing courts authority to reduce an otherwise final term of imprisonment for "extraordinary and compelling reasons." 18 U.S.C. § 3582(c)(1)(A). Section 3582 provides:

> (1) in any case—
>
>> (A) the court, … upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the

defendant's behalf … , may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), **after considering the factors set forth in section 3553(a) to the extent that they are applicable**, if it finds that—

> (i) extraordinary and compelling reasons warrant such a reduction . . .

and that such a reduction **is consistent with applicable policy statements issued by the Sentencing Commission**.

*Id.* (emphasis added). Put simply, courts must consider the 3553(a) factors and an applicable policy statement issued by the sentencing commission.

Section 3553(a) lists several factors for courts to consider when imposing (or reassessing) a sentence:

> The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—
>
> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
> > (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> >
> > (B) to afford adequate deterrence to criminal conduct;
> >
> > (C) to protect the public from further crimes of the defendant; and
> >
> > (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; …
>
> (5) **any pertinent policy statement**—

      (A) **issued by the Sentencing Commission** pursuant to section 994(a)(2) of title 28, United States Code, and …

    (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

18 U.S.C. § 3553(a) (emphasis added). Like § 3582, § 3553(a) prioritizes pertinent policy statements issued by the sentencing commission when making or reevaluating sentences.

    The applicable policy statement is found in Section 1B1.13 of the Sentencing Guidelines. Section 1B1.13 first requires that "the defendant is not a danger to the safety of any other person or to the community" for extraordinary or compelling reasons to exist. USSG § 1B1.13, cmt. n.1. Extraordinary and compelling reasons exist based on–

    (A) Medical Condition of the Defendant.

      (i) The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

      (ii) The defendant is—

        (I) suffering from a serious physical or medical condition,

        (II) suffering from a serious functional or cognitive impairment, or

        (III) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

USSG § 1B1.13 cmt. n.1(A). If a prisoner poses no threat to the public safety and suffers from a particularly debilitating physical or mental illness, she is eligible for compassionate release under § 3582.

Generally, the defendant bears the burden to show the circumstances that make compassionate release an appropriate remedy. *United States v. Heromin*, 2019 WL 2411311, at *2 (M.D. Fla. June 7, 2019).

### III.  DISCUSSION

**A.  This court has jurisdiction over the matter.**

Section 3582 states that a court may consider a "motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf." 18 U.S.C. § 3582(1)(A). Gilstrap sent a letter to the Warden requesting Compassionate Release, citing BOP's inability to properly care for her compendium of medical issues and her continually failing health. On August 30, 2022, the Warden sent Gilstrap a letter denying her request. ECF No. 1048-21. The Motion is thus properly before this Court. *See United States v. Garrett*, 15 F.4th 335 (5th Cir. 2021).

**B.  Gilstrap has established that she is not a danger to others in the community, and the Government has failed to prove otherwise.**

For there to be extraordinary and compelling reasons for compassionate release, the sentencing guidelines first require that the defendant prove she "is not a danger to the safety of any other person or to the community." USSG § 1B1.13(2). Gilstrap has carried this burden, and the evidence the Government presented fails to show that she presents a danger to the community.

As to her ability and disposition to pose a danger to the community, the evidence of Gilstrap's minimal criminal history, the non-violent nature of the crime for which she is incarcerated, her dedication to self-improvement, remorse for her actions, and lack of any offenses during incarceration support granting this motion. Gilstrap's completion of substance abuse counseling, her involvement with Narcotics Anonymous, and her participation in religious schooling suggest a desire to re-enter society as a changed person. ECF No. 1048-11. Though she

5

may be unable to volunteer with the food bank in the same capacity in which she served before, she desires to participate in volunteer activity which she can do from the confines of her home. *Id.*

Gilstrap also has a stable and well-conceived release plan. She will be able to work for her previous place of employment as a file clerk for her father's company from her home. ECF No. 148 at 3, 15. She has the support of her family, ECF Nos. 1048-10, 1048-18–19, including her mother, who is a retired nurse with 43 years of medical experience, and with whom Gilstrap will live upon release. ECF No. 1048 at 2, 17. Gilstrap's mother is willing and able to support Gilstrap and provide for her medical, emotional, and physical needs. *Id.*

The facts the Government implores the Court to consider do not refute Gilstrap's showing. The Government leans heavily on the fact that Gilstrap has consistently attempted to minimize her involvement in the drug trafficking conspiracy and has attempted to use her medical condition to evade legal punishment. ECF No. 1056 at 5–6. The Government further argues that because Gilstrap has not accepted the reality that she is a drug trafficker, she is still a danger to the community. *Id*. at 6. To be sure, there is no question that drug dealing is a danger to the community.

Although Gilstrap's current conviction is serious, the Government fails to show Gilstrap's current ability or disposition to commit similar crimes going forward. While the Court considers the seriousness of her offense in its analysis, it also considers her current physical condition and how it may impact the likelihood that Gilstrap will reoffend, as she is currently confined to a wheelchair. The Court also notes Gilstrap's criminal history category of 1, and that BOP classified her as a minimal risk of recidivism and a minimal risk of violence, the lowest possible. *See* ECF No. 1048-20. Thus, Gilstrap has adequately carried her burden to show that she does not present a danger to the community.

**C. Gilstrap's declining health constitutes an extraordinary and compelling circumstance justifying compassionate release.**

The sentencing guidelines provide that an extraordinary and compelling reason for compassionate release exists if a defendant is "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." USSG § 1B1.13 cmt. n.1(A)(ii). Although this standard is not binding, it should assist in a judicial analysis to determine "extraordinary and compelling reasons." *United States v. Thompson*, 984 F.3d 431, 433 (5th Cir. 2021).

Gilstrap is a 43-year-old woman who has a longstanding seizure disorder and who has more recently been diagnosed with a meningioma brain tumor. Although she suffered from seizures for years before her incarceration, a more recent visit to a neurologist determined that she needs care that is unavailable to her within BOP custody. ECF No. 148-2 at 7–8. For example, she was provided an MRI test, but the results were unreadable. ECF Nos. 1048-9 at 1; 1048-12 at 2. As of filing, counsel had been advised of a follow-up MRI, nearly nine months later. ECF No. 1048 at 11. Additionally, recommendations made by the same neurologist, such as access to a CPAP machine and Gabapentin as treatment for her seizures, have similarly been unfulfilled, despite another outside consulting doctor having reached the same conclusion. *See* ECF Nos. 1048-1–3.

Further, Gilstrap now requires the use of a wheelchair because of a tentative diagnosis that she has injured the Charcot joint in her left ankle. She explains that after being chained to a bed during a particularly long and violent seizure, she noticed issues with her left foot. *See* ECF Nos. 1048-11, 1048-13, 1048-3. Though she provides evidence that she has repeatedly asked for assistance, there is no evidence that her concerns have been addressed. ECF Nos. 1048-16, 1048-13–14. She also maintains that this condition requires immediate care, which BOP has struggled

to provide. ECF No. 1048 at 2, 5 (*citing* ECF Nos. 1048-16, 1048-13–14). Her injury appears to be worsening, and doctors within BOP have more recently diagnosed her condition as complex regional pain syndrome. ECF No. 1048-15 at 1. Together with the problems with her left foot, she has begun to experience similar symptoms in her left hand and eye. ECF No. 1048-17. Because of the diagnostic difficulties regarding her left food and left hand, this indeed raises concerns regarding the progressiveness of the condition and the deterioration of her physical condition.

Gilstrap also suffers from several other medical conditions, including polycystic kidney disease, chronic obstructive pulmonary disease, and sleep apnea, which she maintains has also not been adequately treated. ECF No. 1048 at 6. For example, she cannot access a CPAP machine for her sleep apnea as recommended by her doctors. *See* ECF Nos. 1048-1–3.

The Government, in response, argues that Gilstrap has identified no medical condition that would qualify as an extraordinary and compelling reason for a sentence reduction. It notes that some of Gilstrap's medical issues began before she was arrested for distributing methamphetamine. ECF No. 1056 at 4. Asserting that BOP knows Gilstrap's health condition "better than any outside doctors contacted by her family," the Government contends that BOP denied her request for release because her medical records suggested that she was able to complete self-care activities independently and is not confined to a bed or wheelchair more than 50% of waking hours. *Id.* at 4–5 (citing ECF No. 1056-1). Thus, the Government urges the Court to deny her request for a sentence reduction.

But the Government does not otherwise refute Gilstrap's showing that her physical health is deteriorating, nor does it address her claims that BOP is unable to adequately provide the necessary care. As Gilstrap notes, there is no dispute that she has a brain tumor, has lost the use of her foot while incarcerated, suffers from a seizure disorder, is now largely confined to a

wheelchair, or that the symptoms she is experiencing in her foot are spreading to other parts of her body. The Government asserts that BOP knows Gilstrap's health condition "better than any outside doctors contacted by her family." *Id*. It fails to recognize, however, that BOP chose those very medical professionals to which the Government refers. *See* ECF No. 1048-2. Those BOP chosen professionals evaluated Gilstrap's health and now recommend specific care that BOP has not shown it can provide. The Government also argues that Gilstrap has attempted to use her medical condition to evade legal punishment before, explaining that she "acted as if she were having a seizure" during her arrest for possession of marijuana in 2013. *Id.* at 5. Although the Court acknowledges this argument, it still does not account for the fact that Gilstrap's Motion is supported by the medical recommendations of BOP's chosen medical professionals in treating her.

Accordingly, Gilstrap has met the requirements for compassionate release under § 1B1.13 cmt. n. 1(A). Gilstrap's serious physical and medical condition that substantially diminishes her ability to provide self-care within the environment of a correctional facility and from which she is not expected to recover supports compassionate release.

### D. The § 3553(a) standards permit reducing Gilstrap's sentence to time-served and five years of supervised release.

Because Gilstrap establishes that her condition presents an extraordinary and compelling reason for compassionate release, this Court must consider the relevant § 3553(a) factors in assessing the appropriateness of Gilstrap's requested relief. Considering the relevant § 3553(a) factors in turn, Gilstrap's requested reduction in sentence to time-served is permissible with the imposition of five years of supervised release.

First, courts look at "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). It is uncontested that Gilstrap's crime was serious and merited her original sentence of 87 months. Changes in the defendant's

characteristics, however, may merit a change in her sentence. As the Court already noted, the evidence of Gilstrap's minimal criminal history, the non-violent nature of the crime for which she is incarcerated, her dedication to self-improvement, remorse for her actions, and lack of any offenses during incarceration during support granting this motion. *See supra* III. B. Gilstrap's completion of substance abuse counseling, her involvement with Narcotics Anonymous, and her participation in religious schooling convey a desire to re-enter society as a changed person. ECF No. 1048-11.

Further, unusual hardships a defendant faces during confinement can put a downward pressure on her sentence. *See United States v. Farouil*, 124 F.3d 838, 847 (7th Cir. 1997); *see also United States v. Carty*, 264 F.3d 191, 196 (2d Cir. 2001); *see also United States v. Smith*, 27 F.3d 649, 653 (D.C. Cir. 1994). Apart from her seizure disorder, which predates her sentencing, she originally faced no undue hardships in prison. Now she does based on the loss of the use of her foot, confinement to a wheelchair, her diminished ability to provide self-care, and BOP's inability to provide the recommended care her conditions require. To not consider this change would be to ignore the plain language of § 3553(a)(1). Gilstrap's release from BOP custody also does not mean the end of her sentence, as she will serve her full term of supervised release. Thus, this factor supports reducing Gilstrap's sentence.

Second, courts consider "the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; [and] to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2). Considering the conditions of Gilstrap's confinement, her commitment to substance abuse counseling and programming while incarcerated, and the low recidivism risk she poses, reducing Gilstrap's sentence tracks this factor. She has served over two

years of her sentence while facing serious health problems. Given her rapid decline in health, namely her inability to walk and the spreading of similar symptoms to other areas of her body, it is doubtful that Gilstrap would choose such physical conditions on condition of her sentence reduction. Thus, granting her motion would not incentivize other criminals to commit crimes in the hopes that they will get similarly released early.

Contrarily, the Government urges that Gilstrap has consistently minimized her involvement in the drug conspiracy and inadequately attempted any acceptance of responsibility. ECF No. 1056 at 6. at 15. Thus, it argues that she is still a danger to the community. *Id.* Although this consideration is no doubt relevant, the Parole Board considered this evidence and still gave her a Criminal History score of zero, while BOP similarly deemed her a low recidivism risk. ECF Nos. 735 ¶ 48–49, ECF No. 1048-20. Accordingly, reducing Gilstrap's sentence is in line with this factor.

Third, courts consider the need "to provide the defendant with … medical care … in the most effective manner." 18 U.S.C. § 3553(a)(2)(D). Gilstrap maintains that the medical care she presently receives in prison is inadequate, while release to her mother's home will place her under the consistent and stable care of her mother, a retired nurse. The evidence she presents supports that BOP cannot provide the care she needs, and there is no indication of any reason to expect an imminent positive change in her conditions. Alternatively, Gilstrap's mother is experienced and committed to providing Gilstrap consistent medical care. Thus, this factor favors reducing Gilstrap's sentence.

Finally, courts must consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). The Government claims that the reduction Gilstrap seeks would ignore the sentencing

guidelines and result in a sentence dramatically less than the 121-151-month sentence those guidelines recommended. ECF No. 1056 at 7. There is no dispute that granting Gilstrap's request would result in a sentence much less than the recommended guidelines. But the fact that Gilstrap has served only 25 months of her 87-month sentence is not dispositive, given her current health issues and the obstacles she faces in receiving adequate and complete treatment while incarcerated. Despite the length of her incarceration, the time Gilstrap has spent in confinement has been more punitive than intended due to her conditions. Moreover, requiring Gilstrap to serve her five years of supervised release allows her to continue to repay her debt to society, imposes an adequate punishment, and promotes respect for the rule of law, while also allowing her to seek medical care and treatment by providers who are able to treat her.

Ultimately, the § 3553(a) factors as a whole permit the sentence reduction Gilstrap requests.

## IV.  CONCLUSION

Having considered 18 U.S.C. § 3582(c)(1)(A)(i), USSG § 1B1.13, and 18 U.S.C. § 3553(a), the Court finds that a sentence reduction is appropriate in Gilstrap's case. Accordingly, it is hereby **ORDERED** as follows: Defendant Shauna Gilstrap's Motion to Reduce Sentence (ECF No.1048) is **GRANTED**, and her sentence shall be reduced to time-served. **IT IS FURTHER ORDERED** that Defendant Shauna Gilstrap will still serve her five years of supervised release.

**SIGNED** this 20th day of June, 2023.

_____
ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE